Robert O. and Lydia BLANCHARD,
Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 13192.

District of Columbia Court of Appeals.

Argued Oct. 19, 1978.

Decided Sept. 22, 1980.

John Holt Myers and Thomas Arden Roha, Washington, D. C., for appellants.

Melvin J. Washington, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., when the brief was filed, Robert E. McCally, Deputy Corp. Counsel, and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and HARRIS, Associate Judges, and WEISBERG, Associate Judge, Superior Court of the District of Columbia.*

PER CURIAM:

This is an appeal from the Tax Division of the Superior Court, dealing with one aspect of the District of Columbia joint individual income tax returns filed for the years 1972 and 1973 by appellants. During those years, appellant Robert O. Blanchard was employed as a professor at The American University. At issue is the taxability of certain amounts representing reductions in his cash compensation which were used by his tax-exempt employer as partial payment for an annuity contract. (The employer paid the balance of the contract premiums.)

While a minor adjustment was made in favor of the taxpayer-appellants, the trial court ruled that the amounts in issue are taxable by the District of Columbia. We agree, and accordingly affirm the ruling appealed from. In light of the thoroughness and the sound analysis reflected by the trial judge's Memorandum Opinion, we elect to adopt that opinion with but one minor deletion.** The text of the trial judge's opinion follows.

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

** The deleted material constitutes observations by the trial judge as to how he would have viewed the issues had the principally relevant

## MEMORANDUM OPINION

This matter comes before the Court under Rule 10 of the Tax Division Rules on a stipulated record for our determination of the legal issue involved. The issue to be decided may be stated as follows:

Where an annuity contract is purchased by a tax–exempt employer for an employee under a plan which provides that the annuity contract will be purchased with an amount part of which represents the employee's agreed salary reduction, are the amounts of the salary reduction under D.C. Code 1973, § 47–1557a(b)(2)(B), income to the employee currently, or rather, includible in the employee's income in a later year when the annuity contract pays amounts to the employee pursuant to its contractual terms? We have considered the initial briefs filed on behalf of both parties, the arguments presented at the hearings held on June 9, 1977, and also the supplemental memoranda filed at the request of the Court after the hearing. This Opinion will constitute our findings of fact and conclusions of law.

The relevant facts of this case, most of which were formally submitted by written stipulation, may be briefly stated. The taxes which are in controversy are District of Columbia income taxes for the years 1972 and 1973. The Department of Finance and Revenue of the District of Columbia sent petitioners a notice of assessment dated October 28, 1975. This notice assessed a deficiency for 1972 in the amount of $211.45, including interest. Due to an error made by the District of Columbia in the adjustments made to petitioner Robert Blanchard's salary for 1972, this deficiency assessment was incorrect and should have been, according to the stipulation, $137.29, including interest. The deficiency which was assessed by respondent for the year 1973 was $145.21, including interest. Accordingly, regardless of the decision which we reach, petitioners are entitled to a refund of

$74.16, plus interest thereon at the legal rate from the date of the payment. Petitioners protested the proposed deficiency in administrative channels and filed the present suit for refund after their protest was denied on December 29, 1975, and after payment of the deficiency.

During the taxable years in question, petitioner Robert Blanchard was employed as a professor in the Department of Communications by The American University in Washington, D. C. His wife, petitioner Lydia Blanchard, was unemployed during the relevant taxable years and, except for interest from a joint savings account and other incidental income, had no earned income for those years (when we hereinafter use "petitioner" in the singular, we will be referring to Robert Blanchard). Since October 1, 1947, The American University has offered an annuity plan for its fulltime faculty and staff entitled, "Teachers Insurance Annuity Association" (TIAA). The University has also since October 1, 1956, offered optional participation in another annuity plan, "College Retirement Equities Fund" (CREF). Participation in the TIAA or TIAA–CREF retirement plan is required of all fulltime faculty members of The American University appointed since January 1, 1957.[1]

Under the retirement plans which were adopted by The American University and which were in force during the period in question, employees are given two alternatives. Under the first alternative, the University contributes a specified percentage, namely, 10% of the employee's base salary toward the purchase of an annuity if the employee contributes an additional 5%. The employee's contribution in this instance would be *deducted* from his gross earnings. Under the second alternative, and the one at issue here, the University will contribute the full amount of the 15% toward the purchase of a retirement annuity, provided the employee agrees to forego a salary in-

---

statute been phrased differently than it is. Since our adoption of such language could be interpreted as an advisory opinion on a potential legislative change, we eschew doing so.

1. Manual of Information and Procedures, § II, Part 4, 4 (3d ed. June 30, 1968) (Exhibit A of Stipulation filed January 24, 1977).

crease or to accept a *salary reduction* of a specified amount. This alternative, termed the salary–annuity option plan, was of the type approved by the Internal Revenue Service for federal income tax purposes.[2] An employee can also further participate in his own retirement security by voluntarily paying additional amounts into the TIAA–CREF plan to increase the amount of his future annuities. These voluntary payments can apparently be either additional salary deductions or reductions. Petitioners have represented that these annuity plans of The American University are nonqualified in the sense that the term is meant in § 401(a) of the Federal Internal Revenue Code (I.R.C.).

On September 1, 1970, petitioner executed an agreement with his employer, The American University, to take advantage of the salary–annuity option plan, the second alternative. Under this agreement, which was in effect during the taxable years 1972 and 1973, petitioner authorized a *salary reduction* in the amount that would otherwise have been deducted from his basic salary as his annuity contribution in accordance with the University's mandatory retirement plan–5% plus an additional $50.00 per month in salary reduction, which constituted a voluntary "contribution."[3] Petitioner's rights under the annuity contract purchased by The American University were nonforfeitable at the time of purchase.

The amount of the salary adjustment, pursuant to the salary reduction agreement for the year 1972, was $1,531.36[4] (originally incorrectly calculated to be $2,331.36), and for the year 1973 was $1,454.40. Petitioner, during these years, received from the University either cash or credit equal to the entire sum of money to which he was entitled by virtue of his employment contract. The annuity purchased pursuant to the University's retirement plan and the agreement of September 1, 1970, was one of the credits he received. Apparently, petitioner reduced his total income reportable on his District of Columbia income tax returns filed for the years in issue by the amounts of the salary reductions stated above.[5] In any event, these were the amounts upon which the District of Columbia based the deficiency assessment sent to petitioners on October 28, 1975, and which are the subject of petitioners' suit for refund.

Petitioners argue that the amount of petitioner's salary reduction used by his employer The American University to purchase an annuity contract for petitioner is not income to petitioners currently but rather, is only includible in their income as part of the amounts received under such annuity contract in the years in which those amounts are received under their interpretation of D.C.Code 1973, § 47–1557a(b)(2)(B).[6] They contend that the lan-

---

**2.** See Manual, *supra*, note 1, at 4. We need not discuss, for purposes of this Opinion, the particular requirements a salary–annuity option plan must meet in order to be approved by the Internal Revenue Service.

**3.** See Authorization for Salary Reduction, September 1, 1970 (Exhibit C of Stipulation).

**4.** The salary reduction was in the amount of $70.42 for the first eight months of 1972, and $92.00 for the last four months. Pursuant to the agreement of September 1, 1970, note 3, *supra*, petitioner's salary was further reduced by $50.00 a month. In addition, the University contributed $140.84 for the first eight months and $184.00 for the last four months of 1972.

**5.** See Deposition of Robert O. Blanchard at 21–23 (October 12, 1976). Petitioner stated that this was done to the best of his knowledge by his accountant.

**6.** This section provides:
  (B) *Employees' annuities.*–If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under subsection 47–1557b(a)(11), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subsection (b)(2)(A) of this section, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights under the contract are nonforfeitable except for failure to pay future premiums the amount contributed by the employer for such annuity contract on and after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which

guage of this section is clear on its face and that it was the intention of Congress by this section to provide that an annuity purchased by an employer for an employee should not be income to the employee until such time as the annuity matures and payments begin. They also suggest that, if this Court determines the language of the statute is ambiguous, we must decide whether to follow the interpretation given by the Internal Revenue Service to what petitioners argue is language similar to D.C. Code § 47–1557a(b)(2)(B) in § 403(b) of the Internal Revenue Code of 1954, as amended initially in 1958 and by later Acts of Congress. Implementing its interpretation of the federal statute, the Service has provided, by regulation and ruling, that where an employee agrees to take a salary reduction in exchange for his employer agreeing to purchase an annuity contract with an amount equal to the salary reduction, the amount of the salary reduction will not be considered income taxable to the employee currently. Petitioners on this point argue that the *pari materia* rule of statutory construction requires that the District of Columbia statute be construed in accordance with the federal interpretation of the similar language found in § 403(b) of the Internal Revenue Code first adopted in 1958.[7] The District of Columbia, on the other hand, simply argues, without mentioning D.C.Code § 47–1557a(b)(2)(B), that petitioners are not entitled to a deduction from their gross income for the contributions made by petitioner Robert Blanchard to his retirement annuity plan. It argues that there is no basis in the exclusions from gross income, enumerated in D.C.Code 1973, § 47–1557a(b), to authorize petitioners to take a deduction in the amounts paid to the TIAA–CREF annuity plans which represented the salary reductions on their District of Columbia income tax returns. Fi-

nally, respondent broadly contends that, since Congress took no measure to conform the D.C.Code with the Federal Internal Revenue Code provisions relating to the deduction sought by petitioners here, such a deduction is not authorized.

We note at the outset, that respondent has, we believe, misstated the issue to be decided. The question is not whether petitioners may deduct the amount of the salary reduction each year from their gross income for purpose of the District of Columbia income tax return. Deductions from gross income are provided for in § 47–1557b of the D.C.Code. It is true, as respondent states, that that section does not permit any deductions in the factual circumstances of this case. The issue here, however, is whether the amount of *salary reductions* utilized by The American University may be properly *excluded* from the gross income of petitioners. The resolution of this question necessarily requires our consideration and interpretation of § 47–1557a(b)(2)(B) which, we note, respondent failed to discuss in its briefs. Although the end result may appear to be the same whether the total salary reduction is termed a deduction from gross income or an exclusion from gross income, we believe the proper approach to the issue before us, and the one we shall take, is to view the amount of the salary reduction in terms of a possible exclusion from gross income.

Since it appears that Congress in the District of Columbia Income and Franchise Tax Act of 1947[8] patterned § 47–1557a(b)(2)(B) after a provision of the Federal Internal Revenue Code then in effect, we believe it is highly appropriate, although we are not compelled to do so, to consider the status of the federal law in the area of employees' annuities effective at the time Congress enacted § 47–1557a(b)(2)(B). It is

amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subsection (b)(2)(A) of this section.

7. The petitioners have offered several additional arguments in support of their position. However, in light of our decision, it will not be necessary to address them in this Opinion.

8. Ch. 258, Title III, § 2(b)(2)(B), 61 Stat. 336 (codified at D.C.Code § 47–1557a(b)(2)(B) (Supp. VII 1949)).

more important to look to the federal statute in this instance for assistance in determining what Congress might have intended when it enacted § 47–1557a(b)(2)(B) for the District of Columbia since there appears to be no legislative, judicial or administrative guidance as to the proper interpretation and application of § 47–1557a(b)(2)(B) and since the language of the D.C. statute has remained unchanged.[9]

Tracing the history of the relevant language of the Federal Internal Revenue Code sections pertaining to the taxation of employees' annuities, we find that Congress, in § 162(c) of the Revenue Act of 1942,[10] amended § 22(b)(2)(B) of the Internal Revenue Code of 1939, adding the language with which we are here concerned. As amended by the Act of 1942, § 22(b)(2)(B) of the Internal Revenue Code of 1939 at the time Congress enacted § 47–1557a(b)(2)(B) for the District of Columbia read:

> (B) *Employees' Annuities.*–If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under *section 23(p)(1)(B), or if an annuity contract is purchased for an employee by an employer exempt under section 101(6)*, the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subparagraph (A) of this paragraph, the consideration for such annuity being considered the amount contributed by the employee. In all other cases, if the employee's rights

under the contract are nonforfeitable except for failure to pay future premiums, the amount contributed by the employer for such annuity contract on *or* after such rights become nonforfeitable shall be included in the income of the employee in the year in which the amount is contributed, which amount together with any amounts contributed by the employee shall constitute the consideration paid for the annuity contract in determining the amount of the annuity required to be included in the income of the employee under subparagraph (A) of this paragraph. [Emphasis supplied.]

A comparison of the language in the above–quoted section with the language of D.C. Code § 47–1557a(b)(2)(B) adopted by Congress in 1947 reveals that the two sections are obviously not identical, the most important difference being that in the D.C. statute Congress omitted the phrase "or if an annuity contract is purchased for an employee by an employer exempt under section 101(6)."[11] The dissimilar portions are [italicized] above. We believe it important for our purposes to determine how Congress intended § 22(b)(2)(B) to operate in the federal domain and, if possible, how the courts or the Internal Revenue Service interpreted the language of that section. By doing so, we may be better able to establish the significance of the disparity found between the language of the federal section and § 47–1557a(b)(2)(B) of the D.C.Code.

Congress in the Revenue Act of 1942, added to § 22(b)(2)(B) of the Internal Revenue Code of 1939 the sentence "or if an annuity contract is purchased for an employee by an employer exempt under sec-

---

**9.** Section 47–1557a(b)(2)(B) has never been amended since its enactment in 1947. However, the federal provisions dealing with annuities have undergone several changes. See I.R.C. §§ 403(a), (b) and (c).

**10.** Ch. 619, § 162(c), 56 Stat. 866 (1942) (current version is I.R.C. § 403).

**11.** The first sentence of § 47–1557a(b)(2)(B) read:
> If an annuity contract is purchased by an employer for an employee under a plan with

respect to which the employer's contribution is deductible under subsection 47–1557b(a)(11), the employee shall include in his income the amounts received under such contract for the year received except that if the employee paid any of the consideration for the annuity, the annuity shall be included in his income as provided in subsection (b)(2)(A) of this section, the consideration for such annuity being considered the amount contributed by the employee.

See note 6, *supra.*

tion 101(6)." Under § 101(6) of the Internal Revenue Code of 1939, now § 501(a) and § 501(c)(3), certain religious, charitable, scientific, literary, and educational organizations qualified as being "exempt" from the payment of federal income tax. The Senate Report which accompanied the Revenue Act of 1942 stated:

> If an annuity contract is purchased for an employee by a religious, educational, or charitable organization, which is exempt under section 101(b), the employee will not be required to include in his income the amount paid by his employer for such annuity contract until he actually receives or there is made available to him the amounts required to be paid under the annuity contract, regardless of whether the annuity plan meets the requirements of section 165(a)(3), (4), (5), and (6) and whether the employee's rights are nonforfeitable.[12]

Congress thus made it clear, as evidenced by the portion of the Senate Report just quoted, that, if an educational institution, which is exempt within the meaning of § 101(6) of the Internal Revenue Code of 1939, purchased an annuity contract for its employees, the amount of the employer's contribution would be excluded from the employees' income in the year the contribution is made. The Internal Revenue Service later adopted the language of the Committee Report, *supra*, as part of a regulation interpreting the Internal Revenue Code of 1939, as amended by the Act of 1942.[13] The same regulation also provided that, if an employer purchased an annuity contract which was not under a plan with respect to which his contribution was deductible under § 23(p)(1)(B) of the Internal Revenue Code of 1939, as amended,[14] the amount of the employer's contribution would be *included* in the income of the employee in the taxable year the contribution was made, if the employee's rights under the annuity were nonforfeitable at the time the contribution was made.[15] This Court has been unable to discover any cases construing § 22(b)(2)(B), as amended by the Revenue Act of 1942.

The legislative history underlying the District of Columbia Income and Franchise Tax Act of 1947 is unenlightening as to the reason why Congress omitted from § 47–1557a(b)(2)(B) the sentence dealing with annuity contracts purchased for an employee by an employer which is an exempt organization.[16] The failure to discuss the deletion of an obviously significant sentence is unfortunate. Petitioners, however, have of-

---

**12.** S.Rep.No.1631, 77th Cong., 2d Sess. 141 (1942). Section 165(a)(3), (4), (5), and (6) of the I.R.C. of 1939, set forth requirements to assure that the annuity plan was not discriminatory in nature.

**13.** See Treas. Reg. 103, § 19.22(b)(2)(B)–1, T.D. 5278, 1943 C.B. 478, *renumbered* Treas. Reg. 111, § 29.22(b)(2)–5, and later § 39.22(b)(2)–5(d) (1956) (hereinafter cited to the regulation as it was numbered in the 1956 volume). Current regulations are Treas. Reg. § 1.403(b)–1, *et seq.*, T.D. 6203, 1956–2 C.B. 219.

**14.** Section 23(p) of the I.R.C. of 1939, as amended by the Revenue Act of 1942, Ch. 619, § 162(b), 56 Stat. 863, 864 (1942), provided in part:

> (p) *Contributions of an Employer to an Employees' Trust or Annuity Plan and Compensation Under a Deferred–Payment Plan.—*
> (1) *General Rule.—*If contributions are paid by an employer to or under a stock bonus, pension, profit–sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contribu-

tions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

> \*　\*　\*　\*　\*　\*
> (B) In the taxable year when paid, in an amount determined in accordance with subparagraph (A) of this paragraph, if the contributions are paid toward the purchase or retirement annuities and such purchase is a part of a plan which meets the requirements of section 165(a), (3), (4), (5), and (6), and if refunds of premiums, if any, are applied within the current taxable year or next succeeding taxable year towards the purchase of such retirement annuities.
> \*　\*　\*　\*　\*　\*

**15.** Treas. Reg. § 39.22(b)(2)–5(a) (1956), note 13, *supra.*

**16.** See H.R.Rep.No.543, 80th Cong., 1st Sess. (1947); S.Rep.No.280, 80th Cong., 1st Sess. (1947); H.R.Rep.Nos.699, 801, 80th Cong., 1st Sess. (1947).

fered what they believe are two reasonable explanations for the deletion of the language "or if an annuity contract is purchased for an employee by an employer exempt under section 101(6)" from § 47–1557a(b)(2)(B). First, they argue that a ruling of the then Bureau of Internal Revenue in 1945 made the deleted phrase expendable when Congress in 1947 looked to § 22(b)(2)(B) of the Internal Revenue Code of 1939, as amended, *supra* dealing with employees' annuities, for guidance in drafting the relevant section of the District of Columbia Income and Franchise Tax Act. In the ruling advice had been requested whether the first sentence of § 22(b)(2)(B) was applicable in determining, for federal income tax purposes, the income of employees for whom retirement annuity contracts had been purchased by an employer which was an organization exempt from federal income tax under § 101 of the Internal Revenue Code, *other than* paragraph (6), or which was an insurance company. The ruling held that the first sentence of § 22(b)(2)(B) was applicable in the circumstances presented, provided such employer's contributions, whether or not deductible under § 23(p)(1)(B), met the conditions set forth in § 23(p)(1)(B), since the Bureau saw no reason to distinguish between organizations exempt from tax under § 101(6) of the Internal Revenue Code of 1939, as amended, and those exempt from tax under § 101, other than under paragraph (6), and insurance companies.[17] We cannot agree with petitioners that, simply as a result of the reasoning of this ruling, D.C.Code § 47–1557a(b)(2)(B) must be interpreted in the

same manner as § 22(b)(2)(B), notwithstanding the absence of the sentence dealing with annuity contracts purchased by tax–exempt employers in the D.C. statute. On the contrary, it is obvious that the ruling necessarily was based upon the provision dealing with annuity contracts purchased by employers exempt under § 101(6) being included in the federal statute.

Petitioners' other argument is equally unpersuasive. They contend that Congress by providing in the first sentence of § 47–1557a(b)(2)(B) that employer contributions for the purchase of an annuity contract were to be deductible under § 47–1557b (a)(11), rather then merely § 23(p)(1) (B) of the Internal Revenue Code of 1939, as amended, *supra,* note 14, fully compensated for the deletion of the language.[18] According to petitioners, the consequence of this change to broaden the deductibility language to include any subsection of § 23(p), particularly § 23(p)(1)(D),[19] rather than merely the deduction of employer contributions as provided in § 23(p)(1)(B), was to render insignificant the deletion of the sentence from D.C.Code § 47–1557a(b)(2)(B).

We cannot accept the analysis suggested by petitioners for one very basic reason. The American University is a private educational institution and, no doubt, by virtue of such status, is exempt from the payment of federal income taxes under § 501(a) and § 501(c)(3) of the Internal Revenue Code of 1954, as amended, (formerly § 101(6)). Since it is exempt from the payment of federal income taxes, and therefore not re-

---

**17.** I.T. 3715, 1945 C.B. 62, as amplified in Special Ruling, April 13, 1945, 4 Stand.Fed.Tax Rep. par. 6204.

**18.** D.C.Code § 47–1557b(a)(11) (1973) retaining the same language as originally enacted in 1947 provides:

In the return of an employer, contributions made by such employer to an employees' trust or annuity plan and compensation under a deferred–payment plan to the extent that deductions for the same are allowed the taxpayer under the provisions of section 23(p) of the Federal Internal Revenue Code.

**19.** Section 23(p)(1)(D) of the Internal Revenue Code of 1939, amended by the Revenue Act of 1942, Ch. 619, § 162(b), 56 Stat. 865 (1942), provided:

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

We do not concur in petitioners' suggestion that broadening the deductibility language to include § 23(p)(1)(D) has any particular relevance to this case.

quired to file returns, other than informational ones, the deductibility under either D.C.Code § 47–1557b(a)(11) or § 23(p) of the Internal Revenue Code of 1939, as amended, of contributions it makes as petitioner's employer for the purchase of an annuity contract has no applicability. As an exempt organization, a discussion regarding the deductibility of contributions it might make for the purpose of purchasing employees' annuities is likewise meaningless. Our statute provides in § 47–1557a(b)(2)(B), as did § 22(b)(2)(B) of the Internal Revenue Code of 1939, as amended in 1942, for the purchase of a plan "with respect to which the employer's contribution *is deductible* under subsection 47–1557b(a)(11)." [20] The language of § 47–1557b(a)(11) reads "to the extent that deductions for the same *are allowed* the taxpayer under the provisions of section *23(p)* * * *." [21] We cannot construe either of these sections as if they read "*would be* deductible under § 47–1557b(a)(11) or § 23(p) if the employer were not a tax exempt organization." Perhaps if such language were present, regardless of the absence of the sentence dealing with exempt organizations we might view the argument of petitioners differently. A further consideration which undercuts petitioners' second argument referring to the broadening of the deductibility language in the D.C. statute to include all of § 23(p), is the fact that, in order to have been deductible under § 23(p), contributions had to be expenses which would be deductible under § 23(a). Thus, contributions could be deducted under § 23(p) only to the extent that they were ordinary and necessary expenses in connection with the carrying on of a trade or business or were compensation for personal services actually rendered.[22] The contributions of an *exempt* organization for the purchase of an annuity contract could never fall into either category. We therefore reject petitioners' analysis of the rea-

sons for the absence of the sentence regarding tax–exempt employers in § 47–1557a(b)(2)(B) which did appear in § 22(b)(2)(B) of the Internal Revenue Code of 1939, as amended, as well as their suggestion that the deletion was insignificant for purposes of this case.

Petitioners have vigorously argued that this Court must, under the *pari materia* rule of statutory construction, interpret the District of Columbia statute in accordance with the federal interpretation of language in § 403(b) of the Internal Revenue Code of 1954, as amended in 1958. In particular, they contend that we must follow a regulation promulgated by the Internal Revenue Service which provides that amounts contributed by an employer, namely, an exempt organization, for an annuity contract as a result of an agreement with an employee to take a reduction in salary, or to forego an increase in salary, shall be excluded from the gross income of the employee as long as certain conditions are met.[23]

Congress in § 23 of the Technical Amendments Act of 1958,[24] amended § 403 of the Internal Revenue Code of 1954 by redesignating subsection (b) as (c) and by inserting a new subsection (b). The new subsection (b), which has been amended to some extent since 1958, none of which changes are relevant here, as well as subsection (a) of § 403, now provide in pertinent part:

Sec. 403.  (a) *Taxability of Beneficiary Under a Qualified Annuity Plan.—*

(1) *General Rule.—*Except as provided in paragraph (2), if an annuity contract is purchased by an employer for an employee under a plan which meets the requirements of section 404(a)(2) (whether or not the employer deducts the amounts paid for the contract under such section), the employee shall include in his gross income the amounts received under such contract

---

**20.** See note 6, *supra* (emphasis supplied).

**21.** *See note 18, supra (emphasis supplied).*

**22.** Treas. Reg. § 39.23(p)–1(b) (1956) (current regulations are Treas. Reg. § 1.404(a)–1 *et seq.*). T.D. 6203, 1956–2 C.B. 219.

**23.** See Treas. Reg. § 1.403(b)–1(b)(3), T.D. 6783, 1965–1 C.B. 180.

**24.** Pub.L.No.85–866, § 23(b), 72 Stat. 1620.

for the year received as provided in section 72 (relating to annuities).

\* \* \* \* \* \*

(b) *Taxability of Beneficiary Under Annuity Purchased by Section 501(c)(3) Organization or Public School.—*

(1) *General Rule.—*If—

(A) an annuity contract is purchased—

(i) for an employee by an employer described in section 501(c)(3) which is exempt from tax under section 501(a), or

(ii) for an employee (other than an employee described in clause (i)), who performs services for an educational institution (as defined in section 151(e)(4)), by an employer which is a State, a political subdivision of a State, or an agency or instrumentality of any one or more of the foregoing,

(B) such annuity contract it not subject to subsection (a), and

(C) the employee's rights under the contract are nonforfeitable, except for failure to pay future premiums,

then amounts contributed by such employer for such annuity contract on or after such rights become nonforfeitable shall be excluded from the gross income of the employee for the taxable year to the extent that the aggregate of such amounts does not exceed the exclusion allowance for such taxable year. The employee shall include in his gross income the amounts received under such contract for the year received as provided in section 72 (relating to annuities).

(2) *Exclusion Allowance.—*

(A) *In General.—*For purposes of this subsection, the exclusion allowance for any employee for the taxable year is an amount equal to the excess, if any, of—

(i) the amount determined by multiplying 20 percent of his includible compensation by the number of years of service, over

(ii) the aggregate of the amount contributed by the employer for annuity contracts and excludible from the gross income of the employee for any prior taxable year.

\* \* \* \* \* \*

Petitioners argue that The American University annuity plan comes under the language of § 403(b) of the Internal Revenue Code of 1954, as amended, and also comes under the first sentence of D.C.Code § 47–1557a(b)(2)(B).[25] Thus, they argue, the amounts of the employer's contributions, to the extent that they were comprised of salary reductions each year, were excluded from their gross income in the year of the contribution. Reference to the legislative history underlying the new subsection (b) indicates that Congress intended by the amendment of § 403 to provide, in the circumstances where annuity contracts are purchased for employees by educational, charitable, or religious organizations described in § 501(c)(3) and exempt under § 501(a), and where the annuity contracts do not come under a *qualified, nondiscriminatory plan* described in § 403(a) and the employees' rights to the contract are nonforfeitable, the amount contributed by the employer to be excluded from the gross income of the employee in the taxable year of the contribution is limited to 20% of the employee's compensation for the current year.[26] In other words, § 403(b), as amended in the 1958 Act, does not apply if an employer has established a plan which meets the requirements of § 403(a), and furthermore, the exclusion provided by the new § 403(b) is only applicable when the employee would otherwise be taxed on the employer's contributions.[27]

---

**25.** See note 11, *supra.* The plan, no doubt, is one described under § 403(b) of the Internal Revenue Code of 1954, as amended.

**26.** H.R.Rep.No.775, 85th Cong., 1st Sess. 15–16 (1958); S.Rep.No.1983, 85th Cong., 2d Sess. 35–36 (1958); H.R.Conf.Rep.No.2632, 85th Cong., 1st Sess. 23–24 (1958). Certain adjustments for years preceding the year of contribution would also be taken into consideration under the formula devised in the Act.

**27.** See H.R.Conf.Rep.No.2632, 85th Cong., 1st Sess. at 24.

Without making an in-depth analysis of § 403(b), as amended by the 1958 Act, which we believe is unnecessary here, we will simply note that petitioners argue that this amendment to § 403 did not change the law with respect to the taxation of employees' annuities in the federal domain as it existed prior to the amendment, but merely introduced the 20% ceiling for the exclusion of employer contributions. Once again, however, we must disagree with petitioners' contention. Under the regulations promulgated by the Internal Revenue Service *prior* to the 1958 Act, it was provided that an employee was not required to include in his gross income the amounts paid by his employer for the purchase of an annuity if the employer were an organization described in § 501(c)(3), provided the purchase of an annuity was merely a supplement to past or current compensation.[28] To determine whether the purchase of an annuity was "merely a supplement to past or current compensation" within the meaning of the regulation, one of the facts to be considered was the ratio of the amount paid for the contract and the total amount of the employee's compensation. The regulation then provided:

Other pertinent considerations are whether the annuity contract is purchased as a result of an agreement for a reduction of the employee's annual salary, or whether it is purchased at his request in lieu of an increase in current compensation to · which he otherwise might be entitled. *In such cases, the amount paid for the contract shall also be considered to be current compensation.*[29]

The language of this same regulation also appears in Treas. Reg. § 1.403(b)–1(a)(2), promulgated after the 1958 Act, which is currently in force and which is entitled, "Taxability of beneficiary under annuity purchased by a section 501(c)(3) organization or public school." [30] This part of the

current regulation in which the language of the former regulation appears is made specifically applicable to amounts paid by an employer during the taxable years beginning *before* January 1, 1958. However, the Internal Revenue Service in another portion of the same regulation, which is made specifically applicable to amounts paid by an employer *after* December 31, 1957, sets forth the following rule:

(3) *Agreement to take a reduction in salary or to forego an increase in salary.* (i) *There is no requirement that the purchase of an annuity contract for an employee must be merely a "supplement to past or current compensation"* in order for the exclusion provided by this paragraph to apply to employer contributions for such annuity contract. *Thus, the exclusion provided by this paragraph is applicable to amounts contributed by an employer for an annuity contract as a result of an agreement with an employee to take a reduction in salary,* or to forego an increase in salary, but only to the extent such amounts are earned by the employee after the agreement becomes effective. Such an agreement must be legally binding and irrevocable with respect to amounts earned while the agreement is in effect. The employee must not be permitted to make more than one agreement with the same employer during any taxable year of such employee beginning after December 31, 1963; the exclusion provided by this paragraph shall not apply to any amounts which are contributed under any further agreement made by such employee during the same taxable year beginning after such date. However, the employee may be permitted to terminate the entire agreement with respect to amounts not yet earned.[31]

Petitioners neglected to cite the first part of the current regulation, which was adopt-

---

**28.** Treas. Reg. § 1.403(a)–1(a)(3), T.D. 6203, 1956–2 C.B. 219.

**29.** *Ibid.* (emphasis supplied).

**30.** See Treas. Reg. § 1.403(b)–1(a)(2), T.D. 6783, 1965–1 C.B. 180.

**31.** Treas. Reg. § 1.403(b)–1(b)(3), T.D. 6783, 1965–1 C.B. 180 (emphasis supplied.)

ed December 24, 1964,[32] dealing with the taxability of employee annuities purchased by exempt organizations *prior* to January 1, 1958. They referred the Court only to the portion of the regulation applicable to such employer contributions after that date. Had they examined more closely the first portion of this regulation, they would have seen that in the 1958 Act, Congress did more than merely create a 20% ceiling. At least they would have discovered that the effect of the amendment to § 403(b) in that Act was more extensive than they have led us to believe. In fact, the Senate Finance Committee, when it was considering the final version of the section of the bill which was to become § 403(b), specifically mentioned the language of Treas. Reg. § 1.403(a)–1(a)(3), *supra*, in effect at that time, and stated with respect to it that "[y]our committee intends the objective 20 percent rule set forth above as a complete substitute for these rules in the regulations." [33] Since, based upon the legislative history accompanying the 1958 Act and the most recent regulations adopted by the Internal Revenue Service under § 403(b), it appears that the law was quite different after the 1958 amendments than before, petitioners' reliance on the interpretations of § 403(b) *since* 1958 is misplaced.[34] The District of Columbia statute with which we are concerned, § 47–1557a(b)(2)(B), has never been amended since its enactment in 1947. We are therefore dealing with a statute significantly different from the language of the federal statute in effect since at least 1958, and quite dissimilar from the statute which petitioners ask us to construe in *pari materia* with it.

Where then does this leave petitioners in their attempt to exclude from their District of Columbia income tax returns for the years 1972 and 1973 the portion of the amounts contributed by The American University toward the purchase of an annuity which consisted of the salary reductions?

Petitioners must look for support for their position to the language of D.C.Code § 47–1557a(b)(2)(B) as it read in 1947 and as it still reads today. Petitioners argue, as we have previously stated, that the amounts of the salary reduction are excluded from their gross income *currently* under the first sentence of that section. They contend that the "except clause" of that first sentence is inapplicable to their circumstances, as is the remaining portion of the statute beginning with the words "[i]n all other cases * * *." [35] In analyzing their argument, we note that Congress in the Internal Revenue Code of 1954, divided the former § 22(b)(2)(B), *supra*, into paragraphs (a) and (b). Paragraph (a), entitled, "Taxability of Beneficiary under a Qualified Annuity Plan," incorporated almost word-for-word what had been the first sentence of § 22(b)(2)(B) of the 1939 Internal Revenue Code, as amended. Paragraph (b) was entitled, "Taxability of Beneficiary under a Nonqualified Annuity Plan" and it incorporated what had been the second sentence of § 22(b)(2)(B), beginning with the words "in all other cases" but without including, however, this catch–all phrase. It would appear from this then, that the same sentence, beginning with the words "in all other cases" which is present in D.C.Code § 47–1557a(b)(2)(B), would apply in the circumstances of "nonqualified" annuity plans. Moreover, since the sentence which was included in § 22(b)(2)(B) of the Internal Revenue Code of 1939, as amended, and in § 403(a) of the 1954 Code, dealing with exempt organizations, was deleted from D.C.Code § 47–1557a(b)(2)(B), it would appear that, contrary to what petitioners contend, the facts of this case would be controlled by the second sentence of § 47–1557a(b)(2)(B). Such a conclusion is reenforced when it is considered that The Amer-

---

32. See note 30, *supra*.

33. S.Rep.No.1983, 85th Cong., 2d Sess. at 36.

34. See, e. g., Rev.Rul. 64–333, 1964–2 C.B. 114; Special Ruling November 29, 1963 (1964) 1 Stand.Fed.Tax.Rep. par. 6608; Special Ruling,

March 29, 1965 (1965) 7 Stand.Fed.Tax.Rep. par. 6662; Rev.Rul. 67–69, 1967–1 C.B. 93; Rev.Rul. 70–582, 1970–2 C.B. 95; Rev.Rul. 69–650, 1969–2 C.B. 106.

35. See note 6, *supra*.

ican University's plan, TIAA–CREF, was "nonqualified" in the sense that term is used,[36] and that petitioners' rights under the contract are nonforfeitable.

Under the second sentence of D.C.Code § 47–1557a(b)(2)(B), since petitioner's rights were nonforfeitable, we find that sums contributed by his employer, The American University, consisting of the mandatory salary reduction, as well as the voluntary salary reduction for the purchase of an annuity contract in the taxable years 1972 and 1973, would be included in the income of petitioners for those years. These are the only amounts before the Court in this case. The interpretation of the language in § 22(b)(2)(B) of the 1939 Internal Revenue Code, as amended, and in § 403 of the 1954 Internal Revenue Code as found in the regulations, support this finding. Those regulations provide that, where an employer contributes towards the purchase of an annuity under the circumstances where the plan is "non–qualified" and the employee's rights under the annuity contract are nonforfeitable (except for the failure to pay future premiums), the employer's contributions are taxed to the employee in the year made.[37] That is the type of plan which The American University has and in which petitioner participates. [Note: The deleted material referred to in fn. ** of this court's per curiam opinion, *supra*, constitutes what had been the concluding portion of this paragraph and its accompanying fn. 38. In an effort to avoid confusion, we shall not renumber the remaining footnotes which follow.] * * * *

The decision which this Court finds itself compelled to reach is unfortunate, considering the status of the federal law since 1958. This disparity between our statute and the federal law is perhaps what is most unfortunate and troubling. Similar disparities between our statutes and the Internal Revenue Code have caused this Court great concern in the past, and have placed other petitioners, as petitioners here, in a more disadvantageous position under District of Columbia law than under federal law.[39] We are in no position to add words to a statute which Congress, for some unexplained reason, decided to omit.[40] Our hands are tied and although the policy considerations may weigh heavily in petitioners' favor and we may sympathize with the problems that this decision causes petitioners, and perhaps to others similarly situated, they must look to the legislative bodies to obtain the relief which they sought here.

Accordingly, this Court finds that petitioners are entitled only to a refund in the amount of $74.16, plus interest from the date of payment, which amount had been incorrectly assessed by the District of Columbia. Petitioners' claim for a refund of

**36.** See 1954 I.R.C. § 401(a), which sets forth the requirements of a "qualified" plan.

**37.** See Treas. Reg. § 39.22(b)(2)–5(a) (1956), note 13, *supra*; Treas. Reg. § 1.403(b)–1(a), T.D. 6203, 1956–2 C.B. 219; Treas. Reg. § 1.403(c)–1(a), T.C. 6783, 1965–1 C.B. 180.

**39.** See, e. g., *Goodman v. District of Columbia*, Tax No. 2396 (Super.Ct. D.C. May 12, 1977); *Glover Park Terrace v. District of Columbia*, Tax Nos. 2062, 2063, 2260 (Super.Ct. D.C. April 18, 1977). In *Goodman*, petitioner's claim might not have been rejected if the relevant District of Columbia statute had kept pace with the changes in the federal law dealing with the same subject.

**40.** The law excluding salary reductions for the purchase of employee annuities has never, since 1958, been totally accepted. In fact, Congress in § 2006 of the Employee Retirement Income Security Act of 1974, Pub.L.No.93–406, Title II, § 2006, 88 Stat. 992, restricted the Secretary of the Treasury from issuing certain regulations proposed on December 6, 1972, which would have meant the *inclusion* of salary reductions in the gross income of the employees until after January 1, 1977. See, H.R.Rep. No.93–807, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S. Code Cong. & Adm. News., 4676, 4807–4808; H.R.Conf.Rep.No.93–1280, 93rd Cong., 2d Sess. ——, *reprinted in* [1974] U.S. Code Cong. & Adm. News, pp. 5038, 5134, 5135. For all we know, the climate of Congress in 1947 might have been such that it was anticipating what the Treasury in these proposed regulations was attempting to do. We bring this up only to point out that the moods in Congress, as well as in the Treasury, have changed over the past 2½ decades in the area of salary reductions utilized for the purchase of annuities. The deletion of the sentence which we have discussed throughout this opinion may well not have been an oversight.

all other amounts consisting of salary reductions in connection with the purchase of annuity contracts by The American University is denied.

/s/ Fred B. Ugast
Fred B. Ugast
Judge

DATED: January 4, 1978.

*Affirmed.*

WEISBERG, Associate Judge:

I join in the decision to affirm the trial court's ruling and to adopt as our own, with minor exceptions, Judge Ugast's scholarly opinion. I write separately only to point out that in my view the question we have decided today is necessarily somewhat broader than the question squarely presented by this case. We hold only that where an employee of a tax exempt organization accepts an automatic salary reduction, which constitutes part of the employer's contribution to the purchase of the employee's annuity contract, the employee must include the salary reduction in his gross income for District of Columbia tax purposes in the year in which the contribution to the annuity contract is made rather than the year in which it is received as an annuity. Apart from the employee's salary reduction, the District has not attempted to tax the employee on the remaining portion of the employer's contribution to the annuity, and therefore the proper tax treatment of that portion of the contribution is not before us. However, given Judge Ugast's analysis, which we adopt, it seems to me inescapable that the entire amount contributed by the employer, and not just the employee's salary reduction, would be taxable by the District of Columbia in the year in which it is contributed. I consider it important to highlight this point to facilitate future planning by these litigants and others who may be affected by our decision, and to place into clearer focus the extent of the disparity between local and federal tax treatment of annuity contracts such as the one under consideration. With these few additional observations, I join in the opinion of the Court.